UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:14-cv-170

| STANLEY JEFFREY PENLEY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| Vs. | ) | ORDER |
| MCDOWELL COUNTY BOARD OF EDUCATION, GERRI MARTIN, NATALIE GOUGE, H. RUSSELL NEIGHBORS, AND ROBERT GILLESPIE, | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on the defendants' Joint Motion for Attorneys' Fees. A motion hearing was held on March 6, 2018. Having considered defendants' motion and reviewed the pleadings, the court enters the following Order.

**I.      Background**

Plaintiff is a career teacher for the McDowell County Board of Education who was investigated and disciplined in 2013 for engaging in inappropriate behavior with students, including making a sexual comment in class and posting about a pedophilia-advocacy organization on a student's Facebook page. In 2014, Plaintiff filed this action, alleging that defendants violated his civil rights by retaliating against him for his political activities. Plaintiff's theory was that defendant Gillespie, a local politician, disliked plaintiff for his political activities and conspired against him with others. Essentially, plaintiff claims Gillespie enlisted his co-defendant Neighbors to use his position on the McDowell County

Board of Education to pressure superintendent and co-defendant Martin to persuade school principal and co-defendant Gouge to, in turn, pressure students to lie about plaintiff during the investigation.

Over the course of this lawsuit, plaintiff has relentlessly attempted to uncover any possible hint of a conspiracy against him. Plaintiff amended his original complaint to include the allegations against co-defendant Neighbors, as well as allegations that various board members had confessed to the conspiracy and that emails existed that proved it. Plaintiff further propounded dozens of production requests, which led to review of at least 250,000 electronic documents. Plaintiff also conducted ten depositions. Ultimately, all of plaintiff's efforts proved fruitless, and when defendants conducted a deposition of plaintiff, plaintiff stated that he had no evidence to support his claims, and that the basis for his allegations was rumors or pure speculation of his own. As a result, defendants sent multiple "safe harbor" letters to plaintiff asking him to dismiss his case. The letters noted that if plaintiff did drop his claims, defendants would not seek an award of fees, but if plaintiff chose to proceed, defendants would pursue fees. Plaintiff ignored the safe harbor letters, the case proceeded to summary judgment, and this court granted defendants' summary judgment motions and dismissed plaintiff's lawsuit. On appeal, the Fourth Circuit affirmed, finding plaintiff lacked even a "scintilla of evidence" to support his claims.

Defendants now seek an award of attorneys' fees, citing the cost and expense incurred as they responded to plaintiff's sweeping discovery requests. While defendants also cite the emotional toll they suffered as plaintiff's allegations became known

throughout their community, those issues are not relevant to the instant inquiry and have not been considered.

## II. Standard of Review

"In any action or proceeding to enforce [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). While this provision is facially neutral, the Supreme Court has held that prevailing defendants should receive an award of fees only when plaintiff's claim was "frivolous, unreasonable, or groundless," or when "the plaintiff continued to litigate after it clearly became so." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978). While this standard was established in relation to claims under Title VII, there is "no reason for applying a less stringent standard" to claims brought under 42 U.S.C. § 1983. Hughes v. Rowe, 449 U.S. 5, 14 (1980). Imposing a higher standard on prevailing defendants arises from a desire to avoid a chilling effect on potentially meritorious claims, but "[w]hen a court imposes fees on a plaintiff who has pressed a 'frivolous' claim, it chills nothing that is worth encouraging." Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993).

Generally, a claim is considered frivolous if it lacks a factual basis. Id. at 1080 (holding that a district court's original award of fees was proper when "the court demonstrated that plaintiffs' § 1983 claim had no basis in fact"); cf. E.E.O.C. v. Great Steaks, Inc., 667 F.3d 510, 519 (4th Cir. 2012) (where the court found that the plaintiff's case was not frivolous, unreasonable, or groundless since it "had a factual and legal basis

from start to finish"). A lack of legal basis does not by itself signify a frivolous claim, as this court's predecessor noted that "novel, inventive legal theories" can potentially form the basis for a non-frivolous claim, particularly in a fact-intensive matter. Young v. Annarino, 123 F.Supp.2d 943, 944 (W.D.N.C. 2000). A claim may be frivolous even if it survived a motion to dismiss, as "[a]lthough in some instances a frivolous case will be quickly revealed as such, it may sometimes be necessary for defendants to 'blow away the smoke screens the plaintiffs ha[ve] thrown up' before the defendants may prevail." Introcaso v. Cunningham, 857 F.2d 965, 967 (4th Cir. 1988) (quoting Hicks v. Southern Maryland Health Systems Agency, 805 F.2d 1165, 1168 (4th Cir. 1986)); see also Spence v. Eastern Airlines, Inc., 547 F.Supp. 204 (S.D.N.Y. 1982) (awarding fees under § 1988 to defendant who won directed verdict at close of plaintiff's evidence). Moreover, a plaintiff may establish a prima facie case which is sufficient to survive a directed verdict "but which is nonetheless groundless in light of a defense readily apparent to the plaintiff from the outset of the litigation." Id. Finally, if a district court finds a claim is frivolous, the district court has "allayed any concern that § 1983 claims would be chilled" and need not give further weight to chilling effects on potential litigation. Hutchinson, 994 F.2d at 1081.

In addition to statutory authorization, the court may also assess attorneys' fees under its inherent authority, which may be exercised to assess fees when a party or an attorney has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45 (internal citations and quotations omitted). The bad faith exception is not limited merely to cases where the action is filed in bad faith, but may also

be found "in the conduct of the litigation." Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980).

If an award of legal fees is warranted, the court undertakes a two-step analysis to determine the award. See Chaplin v. Du Pont Advance Fiber Sys., 303 F.Supp.2d 766, 775 (E.D.Va. 2004). First, the court must ascertain what constitutes a reasonable fee for the services performed on the matter, and accomplishes this by multiplying the number of hours reasonably expended on the case by the reasonable or customary hourly rate and then adjusting it based on the twelve Johnson factors. See Arnold v. Burger King Corp., 719 F.2d 63, 67 (4th Cir. 1983); Johnson v. Georgia Highway Express Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). Second, when this amount has been established, the court may adjust the amount in light of mitigating factors, including plaintiff's ability to pay. Chaplin, 303 F.Supp.2d at 778. If plaintiff can afford to pay, "the congressional goal of discouraging frivolous suits weighs heavily in favor of levying the full fees." Arnold, 719 F.2d at 68 (citing Faraci v. Hickey-Freeman Co., 607 F.2d 1025, 1028 (2d Cir. 1979)).

Even if plaintiff is of modest means, he is not absolved of responsibility for filing a frivolous claim. Chaplin, 303 F.Supp.2d at 778 (citing Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 767 (4th Cir. 2003)); see also Cherry v. Champion International Corp., 186 F.3d 442 (4th Cir. 1999) (finding that "plaintiff's good faith, modest means, comparative lack of economic power, and the important public interest served by encouraging others in similar circumstances to pursue colorable Title VII claims" are not valid reasons to deny a prevailing defendant fees). However, forcing a plaintiff "into

financial ruin simply because he prosecuted a groundless case" does not aid deterrence efforts. Arnold, 719 F.2d at 68 (citing Faraci, 607 F.2d at 1028); see also Christiansburg, 434 U.S. at 422 (holding that fee awards that disregard a losing plaintiff's financial straits would soon defeat the overarching remedial purposes of Title VII by discouraging all but the most airtight cases). As such, the court must balance these factors when assessing the amount of an award. McGlothlin v. Murray, 54 F.Supp.2d 629, 634 (W.D. Va. 1999) ("the amount of the award must reflect the reality of plaintiff's . . . ability to pay, while still making him realize that frivolous litigation has its costs").

### III. Discussion

The court has considered defendants' motion (#102) and the statements made at the March 6, 2018 hearing. The court reiterates its finding in a previous Order (#114) that this lawsuit is frivolous and merits an award of fees to defendants. Plaintiff's claims were based solely on rumor and speculation. Extensive discovery efforts did nothing to change this, and indeed only highlighted the lack of a factual basis for any of plaintiff's claims. It is highly distinct from fact-intensive cases of the sort where this court has previously denied an award of fees, and neither is it based on inventive or novel legal theories. Young, 123 F.Supp.2d at 944. Even after the frivolity of plaintiff's claims became abundantly clear to each side, plaintiff refused to withdraw his suit despite safe harbor letters from defendants and their counsel. By continuing to litigate past that point, even if plaintiff's allegations originally had any semblance of merit, plaintiff crossed the line into maintaining a frivolous lawsuit. Christiansburg, 434 U.S. at 422. The fact that plaintiff's claim survived an initial

motion to dismiss does not change this court's finding. Introcaso, 857 F.2d at 967. Finally, the Fourth Circuit's *de novo* review of summary judgment affirmed this court's ruling and confirmed that plaintiff's case lacked even a "scintilla of evidence" to support it. Thus, as plaintiff pursued frivolous claims and continued to do so after a lack of merit became readily apparent, the court finds that defendants are entitled to an award of fees.

In determining an appropriate award, the court engages in a two-step process. First must ascertain what constitutes a reasonable fee for the services performed on the matter, and accomplishes this by multiplying the number of hours reasonably expended on the case by the reasonable or customary hourly rate. Arnold, 719 F.2d at 67. The court has reviewed affidavits submitted by defense counsel. From these affidavits, the fees in this matter based on reasonable hourly rates multiplied by hours reasonably expended are as follows:[1] (1) $206,738.00 for Robert J. King, Caitlin Poe, and Jill Wilson for their work representing defendants McDowell County Board of Education, Natalie Gouge, and H. Russell Neighbors (#104); (2) $88,525.15 for Ann-Patton Hornthal, Patsy Brison, Eric Edgerton, and Morgan Bryant for their work representing defendant Gerri Martin (#105); and (3) $33,849.77 for Ronald Payne and Anne Salter for their work representing defendant Robert Gillespie (#106). In total, an appropriate award of fees in this matter is $329,112.92. After reviewing the fee in light of the twelve Johnson factors, the court sees no reason to adjust the fee. While there was nothing especially novel or difficult about the issues raised by the

---

1     The Court notes that plaintiff did not challenge the calculation of fees.

case, it did require considerable research, analysis, discovery, and time. While excellent representation was afforded to the defendants, specialized skills were not required. The affidavits aver these fees are customary for these cases, and plaintiff does not contest their reasoning. Finally, the court finds that opportunity costs, attorney expectations, time limitations, the amount in controversy, experience, reputation, and ability of the attorneys, undesirability of the case, and nature and length of the relationship between attorney and client were not significant factors in this case.

Now, the court moves to the second step and determines whether to mitigate the award of fees in light of plaintiff's financial circumstances. Arnold, 719 F.2d at 67; Chaplin, 303 F.Supp.2d at 778-79. From the outset, it is clear that plaintiff lacks the ability to pay such an amount, barring significant and unexpected changes in fortune. Plaintiff's declaration (#124) depicts a party already approaching financial ruin without the reasonable fee award to push him over the brink. Plaintiff avers a combined household income between him and his wife of $62,060 per year. However, plaintiff's outstanding student loan debt alone totals $152,000 (which plaintiff has defaulted on), with additional debts in the form of his wife's student loans of over $70,000, credit card debt of $24,300 and medical co-pays and deductibles of $15,000, which have been turned over to collection. Plaintiff's affidavit appears to show extraneous expenses that could go towards the fee award, such as expenses relating to his children's tablets, cable bills, cell bills, and money going to charities, church, political clubs, and associations. But overall, plaintiff's household's debts total $261,300, far outstripping their pay and assets.

Based on this information, the court has difficulty determining an award that would not subject plaintiff to "financial ruin." Arnold, 719 F.2d at 68 (citing Faraci, 607 F.2d at 1028). Nevertheless, the continued maintenance of this suit after plaintiff admitted he had no evidence deserves imposition of a fee award to serve the deterrent function of Title VII. See Faraci, 607 F.2d at 1029 (where the court found that plaintiff would be sent into financial ruin by an appropriate fee award of $11,500 and instead awarded $200 in fees, as that amount was "sufficient to effectuate the deterrent function of § 2000e-5(k)"). As such, after reviewing plaintiff's affidavit and considering his household's income and debts, the court shall order a total award of fees in the amount of $40,000. Mathematically, this represents less than fifteen percent (15%) of a reasonable fee award in this matter. But in light of plaintiff's already-dire financial straits, the court finds such an award strikes the appropriate balance between reimbursing defendants, deterring frivolous claims brought under Title VII, and plaintiff's financial circumstances. Having thus considered the relevant factors for an award of fees in this matter, the court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that defendants' Joint Motion for Attorneys' Fees (#102) is **GRANTED with modification**. Plaintiff shall pay a total fee award of $40,000 as follows: counsel for defendants McDowell County Board of Education, Gouge, and Neighbors are awarded fees in the amount of $10,000, counsel for defendant Martin

are awarded fees in the amount of $10,000, and counsel for defendant Gillespie are awarded fees in the amount of $20,000.

Signed: April 2, 2018

Max O. Cogburn Jr
United States District Judge